# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| ROSARIO DIAZ, INDIVIDUALLY AND AS REPRESENTATIVE OF THE ESTATE OF EVARISTO FERNANDEZ AND AS NATURAL TUTRIX OF ROSA ESTELA FERNANDEZ AND LEOPOLDO FERNANDEZ DIAZ, JOSE FERNANDEZ DIAZ | CIVIL ACTION |
| VERSUS | |
| GOODYEAR TIRE AND RUBBER COMPANY, ET AL | NO. 07-353-B-M2 |

## <u>NOTICE</u>

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 10 days from the date of service of this Notice to file written objections to the proposed findings of fact and conclusions of law set forth in the Magistrate Judge's Report. The failure of a party to file written objections to the proposed findings, conclusions, and recommendation contained in a Magistrate Judge's Report and Recommendation within 10 days after being served with a copy of the Report shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge that have been accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE**

**WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in chambers in Baton Rouge, Louisiana, August 27, 2008.

_____
**MAGISTRATE JUDGE CHRISTINE NOLAND**

**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

ROSARIO DIAZ, INDIVIDUALLY
AND AS REPRESENTATIVE OF THE
ESTATE OF EVARISTO FERNANDEZ                    **CIVIL ACTION**
AND AS NATURAL TUTRIX OF ROSA
ESTELA FERNANDEZ AND
LEOPOLDO FERNANDEZ DIAZ, JOSE
FERNANDEZ DIAZ

**VERSUS**

GOODYEAR TIRE AND RUBBER                        **NO. 07-353-B-M2**
COMPANY, ET AL

## MAGISTRATE JUDGE'S REPORT

This matter is before the Court on the Plaintiffs' Supplemental Motion for Remand
(R. Doc. 68) filed by plaintiffs, Rosario Diaz ("Ms. Diaz"), individually and as representative
of the Estate of Evaristo Fernandez ("Mr. Fernandez") and as natural tutrix of Rosa Estela
Fernandez and Leopoldo Fernandez Diaz and Jose Fernandez Diaz (collectively
"plaintiffs").   The removing defendant, The Goodyear Tire and Rubber Company
("Goodyear USA"), has filed an opposition (R. Doc. 71) to this motion.

## FACTS & PROCEDURAL HISTORY

Plaintiffs filed this action in the 19th Judicial District Court, Parish of East Baton
Rouge, Louisiana, on February 14, 2007, seeking damages related to the death of Evaristo
Fernandez ("Mr. Fernandez") in a motor vehicle accident that occurred on or about April
14, 2004.  Plaintiffs contend that the accident occurred as a result of a "detread" of a tire
on the vehicle being operated by Mr. Fernandez, which vehicle and tire had allegedly been
sold to Mr. Fernandez by Cajun Auto Sales, Inc. ("Cajun Auto Sales").  Plaintiffs further

1

allege that the subject tire was designed by Goodyear USA and its subsidiary, Compania Goodyear USA du Brazil ("Compania Goodyear"), and such companies are liable for alleged defects in the design, manufacture, and marketing of the tire.  Plaintiffs contend that Cajun Auto Sales is liable for alleged breaches of the redhibitory defect warranties and for negligence in its sale of the alleged defective tire and automobile to Mr. Fernandez.

On May 18, 2007, Goodyear USA removed plaintiffs' suit to this Court, contending that Cajun Auto Sales and Compania Goodyear had been fraudulently or improperly joined in this matter, and if their presence in this suit is ignored, complete diversity exists herein.[1] Plaintiffs then filed a motion to remand (R. Doc. 4) on June 15, 2007.  Goodyear USA received several extensions of time within which to respond to plaintiffs' motion to remand so that it could propound written discovery upon the plaintiffs and take Ms. Diaz's deposition to obtain information relevant to the fraudulent joinder inquiry.  *See*, R. Docs. 21, 24, and 40.  Because of the delay resulting from that discovery, the Court denied plaintiff's motion to remand on March 6, 2008, without prejudice to counsel refiling such motion after discovery was completed.  *See*, R. Doc. 47.  On July 25, 2008, plaintiffs filed the present supplemental motion to remand.  As in their previous motion to remand, plaintiffs assert that this matter should be remanded to state court pursuant to 28 U.S.C. §1441(b) because Cajun Auto Sales is a non-diverse defendant properly joined in this

---

[1] The plaintiffs in this matter are domiciled in Mexico and are citizens of Mexico for purposes of diversity jurisdiction.  Goodyear USA is a citizen of the State of Ohio.  Compania Goodyear is domiciled in Brazil and is a citizen of Brazil for purposes of diversity jurisdiction.  Cajun Auto Sales is a citizen of the State of Louisiana.

litigation.[2]  Specifically, plaintiffs contend that the deposition testimony of the corporate representative of Cajun Auto Sales demonstrates that plaintiffs have a viable cause of action against Cajun Auto Sales regarding its failure to inspect, maintain, and warn plaintiffs about the alleged defects in the subject tire.[3] [4]

## LAW & ANALYSIS

**I.      Applicable Legal Standard:**

The removing party carries a heavy burden when attempting to prove fraudulent joinder. *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002).  If there is arguably a reasonable basis for predicting that state law might impose liability on the facts involved, there is no fraudulent joinder. *Travis v. Irby*, 326 F.3d 644, 648 (5th Cir. 2003).[5]  In determining whether there is an arguably reasonable basis for the plaintiffs' claims, a district court must resolve any contested issues of material fact and any ambiguity or uncertainty in the controlling state law in the plaintiffs' favor. *Griggs v. State Farm Lloyds*, 181 F.3d 694, 699 (5th Cir. 1999).  If there is any possibility the plaintiffs

---

[2] Under 28 U.S.C. §1441(b), a civil action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.  28 U.S.C. §1441(b).

[3] Although plaintiffs have not attached a copy of the corporate deposition of the Cajun Auto Sales representative that was taken in this matter, they rely upon that testimony in their motion to remand. Specifically, they contend that such representative testified that he did not perform an inspection of the subject tire to determine whether or not it was suffering from a pending tread belt separation and that the only inspection that was performed by Cajun Auto Sales before placing the defective product on the road was a visual "walk-around" the vehicle to ensure the tires were not flat.  Additionally, plaintiffs contend that the corporate representative testified that Cajun Auto Sales did not monitor and maintain the proper air pressure in the tire in question.

[4] In their supplemental motion to remand, plaintiffs assert no arguments regarding Goodyear USA's contention that Compania Goodyear has been improperly joined in this litigation.

[5] This does not mean that any mere theoretical possibility of recovery, no matter how remote or fanciful, prevents removal. *Badon v. RJR Nabisco Inc.*, 236 F.3d 282, 286, n. 4.  To preclude a finding of fraudulent joinder, the basis for recovery must at least be arguably reasonable. *Id.*

have stated a cause of action against any non-diverse defendant, the court must conclude that joinder is proper, thereby defeating diversity and requiring the case to be remanded. *Sid Richardson Carbon & Gasoline Co. v. Interenergy Resources, Ltd.*, 99 F.3d 746, 751 (5th Cir. 1996).

The Fifth Circuit Court of Appeal has recognized that a court may determine whether a plaintiff has a reasonable basis of recovery under state law in one of two ways. *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004). A court may conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations in the complaint to determine whether the complaint states a claim under state law against the in-state defendant.[6] Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, improper joinder does not exist. However, there are cases, where a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder, and in such cases, the court may, in its discretion, pierce the pleadings and conduct a summary inquiry by examining outside evidence.[7] *Id.*; McDonal *v. Abbott Laboratories*, 2005 WL 957142, * 4, n. 6 (5th Cir. 2005). A court may examine affidavits, evidence, and deposition testimony to determine whether the plaintiff has a reasonable basis of recovery against the non-diverse defendants. *McLin v. H & H Lure Co.*, 102 F. Supp. 341, 343 (M.D. La. 2000).

---

[6] When reviewing a motion pursuant to Fed. R. Civ. P. 12(b)(6), a court "must accept all well pleaded averments as true and view them in the light most favorable to the plaintiff. [The court] will not go outside the pleadings and . . . cannot uphold the dismissal 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his [or her] claim which would entitle him [or her] to relief." *Hernandez v. Maxwell*, 905 F.2d 94, 96 (5th Cir. 1990).

[7] Under a summary judgment-type inquiry, a court is to "pierce the pleadings to determine whether, under controlling state law, the non-moving party has a valid claim against the non-diverse parties." *Hornbuckle v. State Farm Lloyds*, 385 F.3d 538, 542 (5th Cir. 2004).

## II.   Was Compania Goodyear improperly joined?

In its opposition to plaintiffs' supplemental motion to remand, Goodyear USA contends that Compania Goodyear was improperly joined in this litigation for two (2) reasons:  (1) plaintiffs have failed to serve Compania Goodyear with process; and (2) the state court lacks personal jurisdiction over Compania Goodyear.  Because the Court agrees with Goodyear USA's first argument, its second argument concerning personal jurisdiction need not be addressed in detail.  In *Griggs v. State Farm Lloyds*, 181 F.3d 694 (5th Cir. 1999), the Fifth Circuit Court of Appeals held that one of the grounds for finding fraudulent joinder of the non-diverse defendant in that case was that the plaintiff had not made any attempt to serve the non-diverse defendant with either the original or the amended petition. Based upon such failure, the court of appeals found that the "record [did] not support any inference that [the plaintiff] intended to actively pursue claims against [the non-diverse defendant]." *Id.*, at 699.

Similarly, in the present case, although plaintiffs filed this suit in state court on February 14, 2007, and they had until May 15, 2007 within which to perfect service upon all defendants pursuant to La.C.C.P. art. 1201(C),[8] the record does not reflect that they have ever made any attempt to serve Compania Goodyear.  According to the record, plaintiffs requested service, through the 19th Judicial District Court, on Goodyear USA on April 12, 2007, and on Cajun Auto Sales on May 3, 2007.  *See*, Exhibit 1 to Goodyear USA's opposition.  However, plaintiffs made no request for service upon Compania Goodyear either in state court or in this Court after removal.  Furthermore, the law of Brazil

---

[8] La. C.C.P. art. 1201(C) provides, in pertinent part, that service of the citation shall be requested on all named defendants within ninety (90) days of commencement of the action.

"requires that service of process by a foreign party upon a party domiciled in Brazil must be made by means of letters rogatory,"[9] and there is no evidence in this Court's record that plaintiffs ever requested that letters rogatory be issued to effect service upon Compania Goodyear.

Additionally, the Court finds that other actions by the plaintiffs in this matter, beyond the failure to effect service, reflect that plaintiffs do not have an intention to "actively pursue" their claims against Compania Goodyear.  In the Notice of Removal filed in this matter, Goodyear USA's counsel represented to the Court that plaintiffs' counsel had advised him that plaintiff did not wish to undertake the expense of serving Compania Goodyear, and plaintiffs' counsel requested and obtained a stipulation from Goodyear USA agreeing to voluntarily dismiss Compania Goodyear from these proceedings.  *See*, Notice of Removal, R. Doc. 1.  That stipulation, which is set forth in correspondence from Goodyear USA's counsel to plaintiffs' counsel dated May 8, 2007, provides that Goodyear is the designer of the tire in question in this suit, that it is both the designer and manufacturer of the curing press and mold in which the tire in question was built, that it conducted all sales and marketing activities with respect to the subject tire in the United States, and that there are no sales or marketing activities in the United States with respect to the subject tire that are conducted by Compania Goodyear.  Based upon that stipulation, Goodyear USA represented to plaintiffs' counsel (and to this Court, by submitting a copy of the May 8, 2007 letter to the Court with its Notice of Removal) that it has "full legal

---

[9] *See, Tucker v. Interarms*, 186 F.R.D. 450 (N.D.Ohio 1999), quoting *Alpha Omega Technology, Inc. v. PGM-Comercio E Participacoes Ltda.*, 1994 WL 37787 at *1 (S.D.N.Y. 1994); *See also, Commodity Futures Trading Com'n v. Nahas*, 738 F.2d 487, 494 (D.C.Cir. 1984).

responsibility for defending the tire [in question]" and "full  financial responsibility for any

adverse judgment or settlements that may be entered with respect to the manufacture

and/or design of the tire [in question]."   *See,* Exhibit B to Goodyear USA's Notice of

Removal, R. Doc. 1-4.  That stipulation is supported by the affidavits of James C. Stroble

("Stroble"), the Manager of the Product Analysis Department for Goodyear USA, and

Manoel Marini de Almeida ("Almeida"), the Assistant Finance Director and Treasurer of

Compania Goodyear.  *See*, Exhibits 2 and 3 to Goodyear USA's opposition.[10]

Although plaintiffs have never formally dismissed Compania Goodyear from this

litigation and indicated in their initial motion to remand that they wished to "rescind [the]

agreement [to dismiss Compania Goodyear] until they are able to determine precisely what

discoverable information Compania Goodyear [ ] has that pertains to the subject tire," the

record does not reflect that plaintiffs have taken any action to pursue their claims against

Compania Goodyear over the past year and a half by attempting to find out what

discoverable information that entity may possess.  Furthermore, plaintiffs have made no

reference to their claims against Compania Goodyear whatsoever in their present motion

---

[10] Stroble attests to the fact that the subject tire was designed by Goodyear USA in Akron, Ohio, and/or by Goodyear USA's former Kelly-Springfield subsidiary corporation in Cumberland, Maryland, with no involvement by Compania Goodyear; that the authorization/material and construction specifications for the subject tire originated in the United states and not in Brazil; and that the mold the subject tire was cured in during the twenty-seventh (27) week of 2002 was designed by the parent Goodyear USA and/or Goodyear USA's former Kelly subsidiary in the United States with no input or involvement by Compania Goodyear.  *See*, ¶4 of Stroble affidavit.

Almeida also attests to the fact that the tire at issue in this lawsuit was designed by the parent Goodyear USA corporation in the United States, and not by Compania Goodyear, and would have been marketed by the parent Goodyear USA after it was manufactured in 2002 at Compania Goodyear's plant located in Americana, Brazil, using molds designed and manufactured by the parent Goodyear USA.  He further states in his affidavit that Compania Goodyear did not create, control, or employ the distribution system that was used to deliver the tire in question to a retail outlet or the ultimate consumer outside of Brazil.  *See*, ¶21 of Almeida affidavit.

to remand.  Additionally, although Goodyear USA's jurisdictional arguments will not be

addressed in any detail, the Court notes that, because plaintiffs have not submitted any

arguments or evidence concerning Compania Goodyear in their supplemental motion to

remand, they have not refuted the evidence submitted by Goodyear USA demonstrating

that Compania Goodyear is subject to neither general nor specific personal jurisdiction (nor

jurisdiction under a stream of commerce theory) in this state because it conducts no sales

or marketing activities in Louisiana.[11]  Accordingly, the Court finds that there is no

---

[11] In support of its argument that Compania Goodyear is not subject to personal jurisdiction in Louisiana, Goodyear USA has submitted the Almeida affidavit, which establishes that Compania Goodyear has no contacts with Louisiana, much less the "continuous and systematic" contacts that are required for general jurisdiction to exist.  Specifically, the Almeida affidavit indicates that Compania Goodyear has never been licensed to conduct business in Louisiana, has never held itself out as doing business in Louisiana, has no authorized agent for service of process in Louisiana, has never applied for a Certificate of Authority to conduct business in Louisiana, does not conduct any advertising, marketing, or distribution activities in Louisiana, has no employees or representatives who participate in any trade shows, seminars, conventions, or educational programs in Louisiana, is not a party to any agreement or contract in Louisiana, does not engage in any persistent course of conduct or derive any revenue from goods used or consumed or services rendered in Louisiana, does not own any personal property or real estate in Louisiana, does not maintain bank accounts in Louisiana, has no employees, agents, sales representatives, or subsidiaries working in Louisiana, does not sell tires, solicit tire business, or transact any business in Louisiana, and has never initiated litigation in Louisiana.  *See*, Almeida affidavit, Exhibit 3 to Goodyear USA's opposition, ¶¶7-14.

Relative to specific jurisdiction, Goodyear USA again relies upon the Almeida affidavit to demonstrate that Compania Goodyear has neither "purposely directed" its activities toward Louisiana nor "purposely availed" itself of the privileges of conducting activities in this state, in that it does not sell tires in Louisiana, does not sell any tires it manufactures in Brazil in the United Staes, does not conduct any advertising, marketing or distribution activities in Louisiana, does not manufacture any tires in the U.S., including in Louisiana, has its own distribution network in Brazil and its own relationships with its dealers in Brazil, and is not a party to any contracts that its United States parent may have with United States entities that sell tires made by or sold to them by the United States parent (and the United States parent is not a party to any agreements Compania Goodyear has with Brazilian entities that sell tires manufactured by Compania Goodyear).  Almeida also indicates in his affidavit that, when Compania Goodyear sells the tires that it has manufactured in Brazil to its United States parent, it does not share the profits and losses of its parent, including any profits and losses related to the sale of tires by the parent in the United States. *Id.*, ¶¶6, 9, 14, 19, 20.  In its opposition to the present motion, Goodyear USA also points out that, since Compania Goodyear has no contacts with Louisiana, plaintiffs' products liability suit for alleged manufacturing defects in the tire in question does not arise out of or result from Compania Goodyear's contacts with Louisiana.  Instead, plaintiffs' cause of action arises out of Goodyear USA's design of the tire, Goodyear USA's purchase of the tire in Brazil, and Goodyear USA's distribution of the tire outside of Brazil and in the United States since Compania Goodyear only manufactures tires in Brazil and does not sell any such tires in the United States.  When Compania Goodyear sells the tires it has manufactured in Brazil to its United States parent, such sales take place in Brazil, and title to the tires pass to the parent in

reasonable basis for predicting that plaintiffs will be able to recover from Compania

Goodyear USA, and its foreign citizenship should therefore be ignored for purposes of

determining whether diversity jurisdiction exists herein.

---

Brazil, with the parent bearing the responsibility of the freight charges to ship the tires.  *Id.*, ¶20.  In the present case, the subject tire was marketed by Goodyear USA after the tire was manufactured by Compania Goodyear in Brazil, using molds designed and manufactured by Goodyear USA.  Compania Goodyear did not create, control, or employ the distribution system that was used to deliver the tire outside Brazil.  Thus, plaintiffs' cause of action does not arise out of any contacts by Compania Goodyear with Louisiana.  Moreover, the Court agrees with Goodyear USA that the burden on Compania Goodyear of being subject to suit in this forum (thousands of miles from its place of business in Brazil and in a country that speaks a different language than its native Portuguese), would be both unreasonable and unfair.  Considering that Goodyear USA has been served and has agreed to stipulate that it has "full legal responsibility for defending [the tire in question] and full financial responsibility for any adverse judgment or settlement that may be entered with respect to the manufacture and/or design of the tire in this litigation," the Court does not find that this State's interest in litigating this dispute or the plaintiffs' interest in obtaining relief are impaired if Compania Goodyear's presence in this suit is disregarded.

   Finally, because the Almeida affidavit indicates that Compania Goodyear does not sell any tires within the United States; that all tires sold by Compania Goodyear are consummated in Brazil; and that Compania Goodyear does not control Goodyear USA's distribution systems in the Untied States and is not a party to any contract by which tires are distributed in the United States, Compania Goodyear would not be subject to personal jurisdiction under a stream of commerce theory.  The stream of commerce theory allows the exercise of personal jurisdiction over a non-resident defendant that "delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum state."  Although it was foreseeable that the tire in question, which was sold to Goodyear USA in Brazil, could end up in Louisiana, it has been held that the "mere likelihood that a product will find its way into the forum state" is insufficient to establish personal jurisdiction.  Instead, it is the defendant's conduct in connection with the state that is critical, and that conduct must be such that the defendant should "reasonably anticipate being hailed into court" in that state.  *Worldwide Volkswagen v. Woodson*, 444 U.S. 286, 295-298 (1980).  The Court agrees with Goodyear USA that, based upon the Almeida affidavit, it appears that the presence of the subject tire in Louisiana was brought about by a "unilateral act" of Goodyear USA in marketing and selling the tire through its distribution system, over which Compania Goodyear has no control, and such "unilateral act" by Goodyear USA is not sufficient to confer jurisdiction over Compania Goodyear, particularly where Compania Goodyear has structured its conduct so as to avoid being haled into court in Louisiana based upon its lack of activities and contacts in this state.  *See, Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984)("[U]nilateral activity of another party or third person is not appropriate consideration when determining whether a defendant has sufficient contacts with a forum state to justify an assertion of jurisdiction"); *Burger King Corp. v. Rudzewica*, 471 U.S. 462, 475 (1985)(same).

**II.   Was Cajun Auto Sales improperly joined?**

As mentioned above, plaintiffs contend that Cajun Auto Sales is liable for alleged

breaches of the redhibitory defect warranties and for negligence in its sale of the alleged

defective tire and automobile to Mr. Fernandez.  The Court finds that there is no reasonable

basis for predicting that plaintiffs will be able to recover from Cajun Auto Sales under either

of those theories of recovery.  First, under Louisiana's law of sales, redhibition permits only

a *buyer* of a product to rescind a sale, in whole or in part, because of a redhibitory defect

or vice in the product.  *Ahrens v. TPLC, Inc.*, 955 F.Supp. 54 (E.D.La. 1997); *Newbaker v.*

*Lanier*, 497 So.2d 355, 359 (La. App. 3rd Cir. 1986)(redhibitory action is between buyer and

seller); *Ernestine v. Baker*, 515 So.2d 355, 359 (La. App. 3 Cir. 1987)(same).[12]  In the

petition for damages, plaintiffs do not allege that they were the buyers of the subject tire or

vehicle and instead allege that the "subject tires were sold to Evaristo Fernandez" by Cajun

Auto Sales as part of the "sale of the subject Honda Accord to Evaristo Fernandez."  *See,*

¶7 of plaintiffs' petition, R. Doc. 1-3.

Furthermore, although plaintiffs asserted in their initial motion to remand that they

could maintain a claim in redhibition against Cajun Auto Sales on grounds that the subject

vehicle was sold to both Mr. Fernandez and his wife, Ms. Diaz, since the vehicle was

purchased in Louisiana during the existence of their marriage and was therefore considered

community property, the Court finds that Louisiana's legal regime of community of acquets

and gains does not apply to the marriage of Mr. Fernandez and Ms. Diaz because it only

---

[12] *See also,* La. C.C. art. 2520 (which provides that the seller warrants the buyer against
redhibitory defects or vices in the thing sold); *Franks v. Royal Oldsmobile Co., Inc.*, 605 So.2d 633 (La.
App. 5 Cir. 1992)("Articles 2520-2540 make it clear that an action in redhibition may be brought only by a
buyer against a seller of property"); *Ready v. Rhea*, 222 So.2d 560 (La. App. 2nd Cir. 1969); *Duhon v.*
*Three Friends Homebuilders Corp.*, 396 So.2d 559 (La. App. 3rd Cir. 1981).

applies to spouses domiciled in this state. La. C.C. art. 2334 (The legal regime of community of acquets and gains applies to spouses domiciled in this state, regardless of their domicile at the time of marriage or the place of celebration of the marriage). According to plaintiffs' discovery responses, the matrimonial domicile of Mr. Fernandez and Ms. Diaz was Mexico, not Louisiana. *See*, Plaintiffs' Response to Interrogatory No. 3, Exhibit 4 to Goodyear USA's opposition. Thus, Ms. Diaz would not be considered a buyer of the subject vehicle and tire by virtue of Louisiana's community property laws.

Additionally, there is no evidence that Ms. Diaz is the designated representative of the Estate of Evaristo Fernandez, such that she could represent him as the buyer in a redhibition claim. According to plaintiffs' discovery responses, the Estate of Mr. Fernandez has not been opened, and accordingly, there is no designated estate representative who could bring a redhibition claim on Mr. Fernandez's behalf.[13] *See*, Responses to Request for Production No. 6 and Interrogatory No. 9, Exhibit 4 to Goodyear USA's opposition. Furthermore, even if Ms. Diaz is subsequently appointed as the designated representative of Mr. Fernandez's estate, the Court agrees with Goodyear USA that plaintiffs should not be permitted to amend their petition at that time to allege that Ms. Diaz is the representative of the buyer, Mr. Fernandez, with a viable claim against Cajun Auto Sales in redhibition. Such a post-removal amendment to a state court petition cannot be used to divest a federal court of jurisdiction that has already attached. *Cavallini v. State Farm Mut. Auto. Inc.*, 44 F.3d 256, 264 (5th Cir. 1995), citing *Pullman Co. v. Jenkins*, 305 U.S. 534, 537, 59 S.Ct.

---

[13] Although the petition alleges Ms. Diaz is the representative of the Estate of Mr. Fernandez, the Court agrees with Goodyear USA that such allegation is a misrepresentation, considering plaintiffs' subsequent discovery responses indicating that Mr. Fernandez's estate had not even been opened.

347, 348-49, 83 L.Ed. 334 (1939).  Finally, Ms. Diaz cannot maintain a claim in redhibition

against Cajun Auto Sales as an heir of the Estate of Mr. Fernandez.  Plaintiffs' discovery

responses also state that plaintiffs have no documents indicating that Ms. Diaz or any of

the other named plaintiffs are "heirs to the Estate of Evaristo Fernandez."  *See*, Plaintiffs'

Response to Interrogatory No. 9, Exhibit 4 to Goodyear USA's opposition.  In fact, plaintiffs

indicate that, if an estate is ultimately opened on behalf of Mr. Fernandez, the plaintiffs in

this case would be "more properly named wrongful death beneficiaries as opposed to heirs"

of that estate.  *Id.*  Moreover, even assuming evidence exists that Ms. Diaz or the other

named plaintiffs in this case are heirs of Mr. Fernandez, such status would not permit them

to maintain an action in redhibition on Mr. Fernandez's behalf.  *Doughty v. General Motors

Corp.*, 303 So.2d 202 (La. App. 1974)(There was no privity of contract between or among

plaintiffs and defendants, where ascendants and collateral heirs of a deceased automobile

purchaser brought action against automobile manufacturer as a result of an accident fatal

to the purchaser, and thus applicable limitations period was for suit in tort rather than one

in redhibition).  Accordingly, the Court finds that plaintiffs have no viable cause of action in

redhibition against Cajun Auto Sales.

Additionally, even if plaintiffs had a viable cause of action in redhibition against

Cajun Auto Sales, that cause of action cannot result in wrongful death damages in tort,

which the plaintiffs have requested in their petition.  Through a claim in redhibition, a

plaintiff can only obtain rescission of the sale of the product in question and return of or

reduction in the purchase price.  *See*, La. C.C. art. 2520.  Such a claim is based primarily

in contract because it arises from the seller's warranty of the thing sold.  The redhibition

cause of action does not "sound in damages *ex delicto*."  *Scruggs. v. Minton Equipment,*

*Inc.*, 1998-987 (La. App. 3 Cir. 12/9/98), 722 So.2d 130; *Davis v. Le Blanc*, 149 So.2d 252 (La. App. 3 Cir. 1963).[14]  In other words, even if the alleged redhibitory defect in the tire in question in this suit was the cause of Mr. Fernandez's death, plaintiffs' claim in redhibition, if viable, would not result in damages for his wrongful death.

Finally, relative to plaintiffs' negligence claim, Louisiana law provides that a non-manufacturing seller, such as Cajun Auto Sales in this case, is not liable for damages in negligence unless it knew or should have known that the product sold was defective and failed to declare it.  *Kelley v. Price-Macemon, Inc.*, 992 F.2d 1408 (5th Cir. 1993); *Jackson v. Sears Authorized Retail Dealer Store*, 36,166 (La. App. 2 Cir. 6/12/02), 821 So.2d 590, 593.  Furthermore, unlike a manufacturer, a non-manufacturing seller of a product is not presumed to have knowledge of a product's vices, and it is not required to inspect the product it sells prior to sale to determine the possibility of any inherent vices or defects in the product.  *Kelley,* at 1414-15; *Bellow v. Fleetwood Motor Homes*, 2007 WL 130838, *2 (W.D. La. 2007); Harris v. Bardwell*, 373 So.2d 777 (La. App. 1979)(Seller does not have to make a minute inspection or disassemble the product to look for latent defects).[15]

During the deposition of Cajun Auto Sales' representative, Morad Jalillian ("Jalillian"), he testified that he had no knowledge of any defects, problems, or "unreasonable dangers" with the vehicle purchased by Mr. Fernandez or its tires at the time he sold it to Mr. Fernandez; that he sold the vehicle "as is" with no warranty; and that he had no knowledge

---

[14] *See also, Jefferson v. Lead Industries Ass'n, Inc.*, 106 F.3d 1245 (5th Cir. 1997)("[B]reach of implied warranty or redhibition is not available as a theory of recovery for personal injury"); *Cams v. Mazda Motors of America, Inc.,* citing *Monk v. Scott Truck & Tractor*, 619 So.2d 890, 893 (La. App. 3d 1993) and *Draten v. Winn Dixie of Louisiana, Inc.*, 652 So.2d 675, 678 (La. App. 1st Cir. 1995)(concluding that, after the LPLA was enacted, personal injury damages are not available under a redhibition theory).

[15] *See also, Davis v. Burlngame*, 607 So.2d 853 (La. App. 2 Cir. 1992); *Adams v. Owens-Corning Fiberglas Corp.*, 2004-1589 (La. App. 1 Cir. 9/23/05), 923 So.2d 118 (Non-manufacturer seller is not required to inspect the product prior to sale to determine the possibility of inherent vices or defects).

as to why the subject tire failed.  *See*, Deposition of Jalillian, Exhibit 5 to Goodyear USA's

opposition, pp. 26-27, 28-30, 50-51, 73-74, 96-97.  He further testified that he is not a "tire

expert" and that Cajun Auto Sales is not in the business of examining tires to determine

whether they are built in accordance with manufacturer's specifications.  *Id.*, p. 61.  Finally,

Jalillian testified that he would not have purposely sold a vehicle to Mr. Fernandez that was

suffering from some sort of hidden defect of which he was aware.  *Id.*, p. 50.

Considering Jalillian's testimony in light of Louisiana's legal standards relating to

non-manufacturing seller liability, it does not appear that plaintiffs' have a viable cause of

action in negligence against Cajun Auto Sales.  First, there is no evidence that Cajun Auto

Sales had actual knowledge of the alleged defects in the subject tire at the time Mr.

Fernandez purchased the vehicle.  Furthermore, the fact that the alleged defects in the tire

are latent in nature precludes a finding that Cajun Auto Sales had constructive knowledge

of such defects since they could not have been detected based upon a simple inspection

and would have required Jalillian to both conduct a minute inspection of the internal

components of the tire (which he was not required to do under Louisiana law) and to be a

"tire expert" or in the business of examining tires to see if they are in compliance with

manufacturer's specifications,[16] which he indicated he was not.[17]  Finally, although plaintiffs

contend in their petition and in their present motion that Cajun Auto Sales had a duty to

---

[16] The fact that plaintiffs indicated in their discovery responses that they are having the subject tire reviewed by an "expert" and that an "expert opinion" concerning the alleged defects would be "forthcoming" evidences that the defects in question were not detectable by a layperson through a simple visual inspection.  *See*, Exhibit 4 to Goodyear USA's opposition.

[17] *See, Harris v. Atlanta Stove Works, Inc.*, 428 So.2d 1040 (La. App. 1 Cir. 1983)(holding that a non-manufacturing seller did not have actual or constructive knowledge of a hidden defect in a heater where the record reflected that, absent dismantling of the heater, the seller could not have known that the product was defective); *Martin v. Henderson*, 505 So.2d 192 (La. App. 3 Cir. 1987)(where simple visual inspection would not have disclosed the alleged defect, *i.e.*, the presence of water in diesel fuel, the defect was latent and constructive knowledge of that defect was not charged to the non-manufacturing seller).

inspect and maintain the tires in question, no such duty exists relative to hidden defects like those alleged in this case.  Because it had no duty to inspect for such defects, it likewise had no duty to warn of hidden defects or to maintain/remedy such defects.[18][19]  Accordingly, the Court finds that there is no reasonable basis for predicting that plaintiffs will be able to recover in tort against Cajun Auto Sales, as a non-manufacturing seller.  Because neither plaintiffs' redhibition claim nor their negligence claim against Cajun Auto Sales has a reasonable chance of success, the Court finds that Cajun Auto Sales has been improperly joined in this case, and when its non-diverse citizenship is disregarded, complete diversity of citizenship exists herein between plaintiffs and Goodyear USA, such that plaintiffs' motion to remand should be denied.

## **RECOMMENDATION**

For the above reasons, it is recommended that the Supplemental Motion to Remand (R. Doc. 68) filed by plaintiffs, Rosario Diaz, individually and as representative of the Estate

---

[18] *See, Jackson v. Sears Authorized Retail Dealer Store*, 36,166 (La. App. 2 Cir. 6/12/02), 821 So.2d 590, 593 ("[I]t is obvious that, as a matter of law, Sears, as a non-manufacturing seller, had no duty to inspect or test the product for the type of inherent design vices or defects alleged in this case.  The imposition of such a duty would effectively make the non-manufacturing seller a guarantor against defects over which it had no control or responsibility.  The light of reason illuminates the unduly onerous burden such a duty would inflict upon retailers").  Similarly, in the present case, it is clear that, under Louisiana law, Cajun Auto Sales, as a non-manufacturing seller, had no duty to inspect, test or maintain the subject tire for the type of latent design defects alleged by the plaintiffs.  Cajun Auto Sales should not be the guarantor against such defects over which it exercised no control.

[19] Without proof that the non-manufacturing seller had actual or constructive knowledge of a defect in a product, the plaintiff will not be able to carry its burden of proving that the seller owed him/her a duty to disclose that alleged defect and to inspect, test, and maintain the product relative to that defect. *Jackson*, at 593.

15

of Evaristo Fernandez and as natural tutrix of Rosa Estela Fernandez and Leopoldo

Fernandez Diaz and Jose Fernandez Diaz, is hereby **DENIED**.

Signed in chambers in Baton Rouge, Louisiana, August 27, 2008.

_____

**MAGISTRATE JUDGE CHRISTINE NOLAND**